We'll next hear Scholl v. Walgreens, number 25-5053, counsel. You may proceed. Your honors, and may it please the court, Jason McVicker on behalf of Jackie and Eric Scholl and JJS, a minor child. I intend to reserve three minutes for rebuttal and I am going to refer collectively to our appellees as Walgreens. I want to start with a short recitation of the facts because JJS is a minor child who was adopted from China with a wide array of really serious health problems. Those include developmental delay, those include deafness, and a particular important today is a diagnosis of vaginal agenesis. Put simply, her body cannot naturally clear menstrual fluid or tissue, resulting in an extremely painful internal buildup. And in Walgreens' brief, they say, well, she didn't die. That does not change the horrifying and painful nature of the injuries that she suffered as a result of Walgreens' failure to timely dispense this medication. Now, as you know, the family ultimately chose to manage vaginal agenesis using Lupron Depo shots to suspend JJS's menstrual cycle. This prescription, for a variety of reasons, had to be filled by a specialty pharmacy. And what this case ultimately comes down to is what duty does a pharmacist owe a patient? Now, Walgreens, in its brief, sort of takes issue with the word patient. But as the court can see from the motion for summary judgment, to which was attached a patient assessment report and consolidated patient notes, it had no difficulty admitting that JJS was a patient below. I would also direct the court's attention to Walgreens' corporate representative's testimony. Catherine Cirincione, who testified that she is both a pharmacist and an attorney, admitted in her deposition that JJS was a patient. She also, I think importantly, admitted in her deposition at page 38 that time is of the essence when filling these prescriptions. And that can be found- Counsel, could I just ask you, so I understand that the duty question is presented essentially in two parts. One is whether Walgreens owes a duty to fill prescriptions under Oklahoma law. And the other is more of an as-applied kind of duty. That is, did Walgreens assume a duty based on what happened here to the plaintiffs through its actions? I follow. Does that work so far? Yes. Okay. So when you start referring to the record and these documents and deposition and so forth, which of those two are you talking about? I think there's analytic overlap here because the district court departed from the arguments that Walgreens made. And so I think we need to talk about all of them together. Well, that's fine, but it would also be helpful at some point to maybe pull out and, because you're making two separate, you are making two separate arguments. Certainly, Your Honor. Yeah, okay. The common law issue here, I think, is probably the simpler of the two issues. Under Oklahoma law, and again, we are talking about what the district court did in this case. Walgreens argues in its motion for summary judgment at pages 16 through 19, we satisfied our duty. We terminated our duty by following our internal policies and procedures. And then we did not re-assume a duty, which I think is a pretty important admission there, until later. That is the argument that Walgreens makes in its motion. The district court took a third path by finding that there was no duty at all. And I want to start with the common law duty because I think it is clear error in this case. The Oklahoma Supreme Court in Wofford versus Eastern State Hospital declared that you have a common law duty anytime it is foreseeable that your failure to satisfy your professional obligations could harm someone. And if the question is simply, was it foreseeable that the failure to timely fill this prescription would injure JJS? The answer is clearly yes. Wofford is important for two other reasons. When did the duty arise that you're describing? What moment? When they accepted JJS's prescription as a patient. And I would direct the court to the patient assessment report and the consolidated patient notes attached to Walgreens motion for summary judgment. Is that June one or two? Yes. Why isn't it a conditional duty? If you get the pre-authorization, then we'll do X, Y, Z. But if you don't, good luck. It sounds like you don't even wanna use Walgreens anymore. Well, I think that's a hypothetical question, Your Honor, because the fact is, Walgreens did receive the pre-authorization number. I would also note, Your Honor, that in addition to the mere fact that there is a pharmacist-patient relationship, Walgreens represents to patients in general and to the Scholls in particular that they are going to do all of the work for this. This is a representation they make to all of their patients and a representation they make to Ms. Scholl. So was there any limit, any time limit, in getting the pre-authorization if it had gone on for three months? I think that would be negligent. On whose behalf? Certainly on Walgreens. Okay, do you think Walgreens could secure the pre-authorization and had a duty to do that? Yes. I thought the doctor had to get it. Well, again, that's not what Walgreens tells patients. Well, but isn't that what Walgreens told Dr. Hildebrand? It is. Well, then isn't that where the responsibility was for pre-authorization? I think you could make an argument that there is a form of ghost-torphies or liability or comparative negligence there, but it does not negate the pharmacy's own duties. Again, Wofford, I think, governs here because Wofford makes the important holding. Is Wofford a pharmacy case? No, Your Honor, it's a psychiatry case. What does it have to do with pharmacies? Two things. First, it says, as a matter of Oklahoma Supreme Court precedent, that there is no rational basis for insulating any particular professional calling from liability for negligence occurring in its performance. It also explicitly rejects the district court's conclusion. Where is the discussion of duty, though? I mean, you don't get to negligence without a duty. Where's the duty in that? In Wofford? In the statement that you just quoted. The question in Wofford was whether or not a psychiatrist owed a duty to, a duty of care in discharging a psychiatry patient who could be a danger to others. Similar to the tariff. It seems like a far cry from a pharmacy getting a request for a prescription and needing pre-authorization. I disagree, Your Honor, because. There's no factual distinction between those two scenarios. Is that what you're telling us? I think you can form factual distinctions, certainly. But what the Supreme Court says is, two things here that are relevant in Wofford. The first is, there's no rational basis to just say pharmacists don't have a duty. That is not a holding that the Oklahoma Supreme Court has ever made. Separately, Wofford. On the first issue you raise, that was the holding of the district court. That under the Pharmacy Act and the Pharmacy Board of Regulations, there is not an express duty to fill. So we're back to that issue. Unless you want to revise that statement. No, Your Honor. I think we're still on that issue and I want to. On what issue? On this issue of duty. I thought we were on a common law issue. Isn't that what you wanted to talk about with Wofford? Yes, Your Honor. Okay, the statement you just made sounded a lot more of a statement, a general statement about Oklahoma law on the duty to fill prescriptions by pharmacies. And this is my problem with your arguments. You seem to toggle between the two and you've got to give us an analytical distinction to understand what you're saying. Wofford answers this question. Is it foreseeable that the pharmacy's failure to fill this prescription could injure JJS? Wofford also explicitly rejects the district court's- So you're focused on a case that has to do with a psychiatrist-patient relationship? Yes. Here we are presented with a case where there is a pharmacist-patient relationship. And Wofford recognizes- That's the same as a doctor-patient relationship? No. But Wofford recognizes that these- Well, if it's not the same as a doctor-patient relationship, why does Wofford control? Wofford says that regardless of the distinctions, because Wofford deals with this- Regardless of the distinctions? I mean, you need a case that's on point. You don't have an on-point case. Give us a pharmacy case. Do you have one? No, Your Honor. All right. Well, that's not accurate. I think Cavalli addresses this from the Fifth Circuit. Okay. All right. Do you have an applicable state law case that talks about the pharmacy duty? No, Your Honor, but I think that you are drawing the question at a level of abstraction that is not consistent with Oklahoma law. I'm drawing the question at a specific to pharmacies. It's not abstract at all. Under Oklahoma law, you owe duty as a professional anytime it is foreseeable that your negligence could harm your client, your patient- Regardless of the profession. That's an abstract statement. Is that your position? Yes, Your Honor. So all of these cases that you are relying on that don't deal with pharmacists, it's your position that they're still relevant because there's a general professional duty recognized in Oklahoma. Is that your position? Exactly. And this Court, interpreting Oklahoma law, agreed in McGee v. Forrest Oil Company. This is a general negligence principle. This is a common law duty. That applies regardless of the profession. That is correct. Go ahead. I didn't mean to interrupt. No, no, you go ahead. I would also note that the authorities that the District Court and Walgreens rely on are non-precedential opinions of the Oklahoma Court of Civil Appeals. One of which is not a negligence case and does not purport to address tort duties. So let me, I want to redirect you. As Judge Matheson pointed out, we have these two buckets, the duty under Oklahoma law and the course of conduct. Let's assume that we disagree with the argument that there's a general professional duty in Oklahoma that would apply here in favor of your position. And what's left then is there has to be some duty from Walgreens' course of conduct. Yes, Your Honor. Focusing just on that, that then requires us to look at what the evidence was at summary judgment, right? I agree. So what exactly is the evidence that we should be looking at here that Walgreens promised anything, made a contract, took on a special relationship before July 13th? I would direct the court to several places. I think the most salient testimony can be found in Ms. Scholl's deposition at appendix volume three. In the passages, the deposition pages are 174 through 176. And that's at the appendix 148. I would also direct the court to Walgreens' corporate representative's deposition testimony where she admitted there was a duty to timely fill a prescription at deposition page 43, appendix volume three, page 69. I would also direct the court's attention to the promises made to patients that Walgreens attached to its own motion at appendix volume four, page 41. Additionally, Your Honor, one of the complaints that we have about the breach of contract. Can I just ask you, of all the sites that you just gave us, what's the answer to Judge Rossman's question about what happened here, the course of conduct? Could you elaborate on any of those testimonies? Walgreens told this patient that they would fill the prescription when they got the preauthorization number. They got the preauthorization number in June. They didn't fill the prescription. I would also note here that this court's review is de novo. And applying common sense to these facts, look at that patient chronology that Walgreens attached to its own motion. When Jackie Scholl called the pharmacy and said, here's the preauthorization number, they told her they would fill it. Now the district court, suis fonti, declares that, well, we don't know what happened in that call. Is that on June 16? Isn't that when they got the preauthorization? In June, yes, Your Honor. June 16. I believe that's accurate. Okay, I think it is, but if we're off a day, it doesn't matter. What is the evidence that when they got the preauthorization number, and I thought Dr. Hildebrand communicated it too, didn't she? That is correct, Your Honor. Separate phone calls, but same day. Okay, two phone calls. What is the evidence at that point that Walgreens said, okay, we're going to fill the prescription? What does the record tell us there? This ties into two issues. And one is, from the record, again, common sense. What was this family supposed to do? Your Honor, you just said that they said they were going to fill the prescription. Is there anything in the record that supports that on June 16? Yes, Your Honor. Because they'd already closed the file. Well, yes, they did. Here's the thing. I just want to know, what's your evidence? The record reflects that the file closure was not communicated to my client. When my client communicated with Walgreens, they told her that they would fill this prescription. Okay, what's your evidence of that? That's what I'm getting at. Yes, Your Honor. Can you pin that down? I'm trying to answer. I'd love to hear an answer. When you look at those patient notes, there is no rational explanation for the gap between June and July, except the fact that my client was led to believe by Walgreens that the prescription was going to be filled. Is there a record and a page site, and here's what it says on that page? That's the question. And if you don't know the answer, then say you don't know the answer. Your Honor, this is leading into my second complaint about the district court's sui sponte decision. All right, you're over time, and you can keep going for a little bit, but. I appreciate that, Your Honor. Let's get to the point. One of the arguments that we have raised on appeal is that if this argument, that we had to enter into a separate contract with Walgreens after the pre-authorization had been provided, an argument that Walgreens did not raise, that the district court raised sui sponte, we would have submitted an affidavit from Ms. Scholl. This is something that Walgreens didn't raise, it wasn't part of their motion, and it was so unimportant to Walgreens that they didn't ask about it in her deposition. So, just to clarify, is your answer then to the questions point us to a record site, that there is no evidence, and that's because you were not on notice that you needed to develop this evidence? That is correct, Your Honor. Okay, so there is no evidence, and so this connect, just so that I understand, that this connects to your allegation of error on the sui sponte ruling. And. Is that right? That is exactly correct. And, absent that, I am relying purely on circumstantial evidence that is in the record, but I'm not going to tell you that circumstantial evidence is not different than direct evidence. That's a fair point. Thank you, counsel. I appreciate the explanation. I think we got to where we were hoping we could get. Thank you, Your Honor. Thank you. All right. May it please the court, good morning. My name is James Goldschmidt on behalf of Alliance RX. With me at council table is my partner, Stacy Alexgen, who leads our representation of Walgreens in this and other matters. If I may, before addressing points of disagreement with the presentation you just heard, I'd like to offer a framework that will provide some structure to the discussion. It's along the lines of the questions that have already been asked. It'll take me about a minute to set up. The key concepts running through today's discussion of duty are first, the source of the duty, whether it's preexisting or assumed, very different things. And second, the scope or nature of the duty. Is it a duty to timely fill a prescription or a duty to fill the prescription, period? The source of the duty matters because whether there's a preexisting duty is a legal question, whereas whether the duty was assumed requires evidence of assumption. That was already discussed. So what plaintiff needs to show to establish the duty differs based on whether we're talking about one or the other. The scope of the duty matters because on the legal side, we don't reach a duty of timeliness if there's no duty to fill the prescription at all. And on the assumption side, it defines what the plaintiff needs to show Alliance Rx assumed. Did it assume a duty to fill the prescription or did it more specifically assume a duty to do so within a particular time? Putting those two concepts together gives you four quadrants for your analysis. Preexisting duty to fill, preexisting duty to fill timely. Assumed duty to fill, assumed duty to fill timely. Keeping in mind which of those four quadrants we're in is really important to clarity of analysis. And if we lose sight of it, the analysis becomes very jumbled. In fact- Was Walgreens' litigation strategy in proceeding on summary judgment to essentially assume Walgreens owed a duty from June 2nd until June 16th duty of corporate policies. Was that part of your litigation position? Our litigation position was a contingent argument that any duty we assumed, if any, was discharged or terminated by mid-June and not reassumed until July. That is not an admission that Walgreens assumed a duty at any time. Did Walgreens ever, what needed to be said was we've about had it. We keep trying to get this preexisting approval and we're not getting it and we're tired of running around our office. We've got 10,000 other prescriptions. So you're on hold. We're just putting your file on ice. Go somewhere else or come and hand us a preauthorization or we're not doing anything. Why didn't it have to tell the Shoals that? Because if it had told them that, things might have turned out differently. So as a factual matter, the evidence shows Walgreens did leave a message saying that there's a dispute in the record over whether Mrs. Shoal received it. As a legal matter, why didn't they have to do that? Goes back to the question of what is the legal duty here? Is there a legal duty to fill the prescription? They lured them in a little bit and realizing that's somewhat charged language, lured them in a little bit with, if you get us a preauthorization, we'll fill your prescription. That's the only thing holding us back. And nice financial incentive to fill that prescription. These drugs cost a lot of money. And so if you're the consumer in that instance, you assume that if you, they've told you, if you get the preauthorization, we'll fill the prescription and they got it and they had no reason to think, so now they're not gonna fill the prescription. I respectfully disagree with the framing that's based on they told her, if you get the preauthorization, we'll fill the prescription. What they told her was, we can't fill the prescription without the preauthorization. That's a very different thing. It's not a promise to do anything. And when asked for anything in the record showing Walgreens Alliance RX affirmatively saying, we'll do this. The concession was, it's not there. There's nothing in the record ever showing them doing that. Saying. Well, isn't there at least a reasonable inference though, that if Walgreens is saying, look, the doctor's gotta get the preauthorization. Why can't one infer from that, well, what that says is when the doctor gets it, we'll fill it. That's not, that is not an appropriate leap because. Well, why not? I mean, we're at summary judgment, right?  You're the moving party. Inference is for the non-moving party. Right, but. Why isn't it a reasonable inference? Because to assume a duty, we need something showing an affirmative representation by Alliance RX that it will do something. And keeping in mind the quadrants, not just fill the prescription because it did fill the prescription. So ultimately, if it assumed a duty to fill the prescription based on this theory, it met that duty. All right, then let me just ask you this, and I'm not sure which quadrant I'm in, but didn't Dr. Hildebrand and the Scholes give Walgreens the preauthorization number on June 16th? Yes, sir. Okay, and why didn't that trigger the duty? Well, I would.  The question there is, trigger what duty? Trigger a duty to fill the prescription? Yeah, the duty to fill the prescription. Because the only way we get there is either a preexisting duty under Oklahoma law, which doesn't exist, or some assumption by Walgreens. Well, that, well, okay. And simply receiving. You're saying that simply receiving the information is not enough. It is not enough, because to assume a duty, there needs to be some response to that information, such as. They didn't just receive the information. There'd been previous back and forth communications that, look, this is what we need if we're gonna fill the prescription. And I'm kind of back to, we get to this point, and if we're drawing reasonable inferences from a course of conduct over that June 1 to June 16 period of time, why wouldn't Dr. Hildebrand and the Shoals have a reasonable, foreseeable expectation that the prescription's gonna get filled? So the course of conduct that we're talking about is really only conversations, discussions back and forth between mostly AllianceRX and the medical provider, a couple with Mrs. Shoal, where the only thing AllianceRX said in any of those conversations was we cannot proceed without this information. We cannot proceed without this information. That is not a representation that they will do anything. It is not an assumption of any obligation. It is saying no, no, no. In fact, at one point, the record shows Mrs. Shoal offered to pay. AllianceRX said, we won't let you do that. No again. At every point in this discussion. Well, why isn't it a fair inference that you weren't gonna do anything until you had what you needed to proceed, and once you had the authorization, you'd proceed? That seems to be an entirely fair inference for a customer to draw. The first part is true. The first part is fair. We're not gonna proceed without this. The second part is not a reasonable inference. What in your view would have made, what kind of evidence would have made that a reasonable inference? That second part. If in response to any of those requests, Walgreens had said, as soon as we get that prior auth, we'll be right on it. We'll fill the prescription promptly. Or we'll fill it within a particular time. And again, keep in mind, Walgreens, Alliance Iraq did fill the prescription. So what we're talking here ultimately is not about assumption of a duty to fill it, which they satisfied, but to do so timely. And so you would actually have to show a representation specific to how quickly we'll do that. That's not fair. It seems that you agree that when you filled it in July 13th, that you actually filled the prescription, that you had a duty to do that then. What was the source of the duty then? The assumption of that duty in response to the prior auth that came in July. Because the record does show that when the prior auth came in July, Alliance Iraq said, we will act on this and fill the prescription. That's the piece that was missing back in June. Doesn't this all kind of defy reality? You're presenting this as though it's an open question. And sometimes Walgreens will fill one if they get the pre-existing, and sometimes they won't. And you take your chances if you roll with Walgreens. If you want some better representation, go to Walmart or somewhere. But my guess is that 99% of the time when they say get us a pre-authorization, they fill the prescription, unless there's a problem that develops. And there aren't any things like that in this record that I'm aware of. So you're cutting this awfully thin as far as what a consumer would understand. So a couple of points in response to that. First of all, I think it's important to keep in mind we're not talking about a retail pharmacy here where you go into the app on your phone and you see that a prescription has been received at Walgreens and they say we'll have it for you by tomorrow. We're talking about a specialty pharmacy that's dealing primarily with medical providers and insurers. And so that framework on a level of practical reality doesn't quite translate here. That's important to keep in mind. The second point I would make in response is it's their claim that Alliance Rx assumed a duty to fill this prescription within a particular time. That was the way they framed it today. That was the way it was framed in their appellate briefs. That was the way it was framed below. And to show that as an evidentiary matter, you need some representation from Alliance Rx. Not only that it would fill the prescription, which may be a fair inference from this course of conduct, but a specific representation as to how quickly that will happen. What do you mean by a particular moment in time? Any framing of timeliness. Well, they're not saying it had to be done in four days to the hour. They're saying it had to be done when your condition was met. We need pre-authorization. So it's not actually clear at all what they mean by a duty of timeliness here because they never say. So they leave this court to fashion a standard of timeliness if that's the direction you want to go. Any representation regarding prompt filling of the prescription, quick turnaround, a particular number of days, any of that would check the box in our analysis. But it's not there. I think what you're asking us to think about is that the plaintiffs presented a specific kind of duty, a duty to timely fill. And the evidence that we're looking for in terms of a course of conduct to support that duty has to be a course of conduct with respect to timeliness. Is that your position? That's exactly right. Yes, Your Honor. And it's important to emphasize that timeliness piece because if we're just talking about an assumption of a duty to fill the prescription and you want to say that's a fair inference from what happened here, again, Alliance Rx did that. It did fill the prescription. There's no dispute that that assumed duty, if it was assumed, was satisfied. Counsel, didn't you also say that they did fill the prescription but it was because they got prompted again on July 13 by Dr. Hildebrandt and the Schultz. But they were prompted in a, really, I don't know if it's any meaningful different way when after the course of about two weeks, they finally get the pre-authorization on June 16. And I'm wondering about this timeliness argument. I mean, Longinus is at least on notice that this is a drug the doctor thinks is needed. I mean, why wouldn't they need it on a timely basis? So I think it's important there to keep a focus on the provider's role in all of this. Walgreens Alliance Rx only knows what it's told by the medical provider. And certainly, we know from the medical providers and from the family's side of the case that this was a time-sensitive situation, that it was a set of factors unique to this individual and her condition. The question is, how much of that did Alliance Rx know and how much of the responsibility was on the provider to emphasize the urgency of the situation to Alliance Rx because it was the provider's responsibility to get the prior authorization? Are there certain drugs, maybe this one, where it's inherently a time-sensitive situation just by virtue of what the drug is? Yes, potentially. And again, if in response to that, Walgreens Alliance Rx had said, based on that, we're giving you this assurance that we'll do this within a certain time, there would be a duty there. That just never happened. I want to throw in one other question about this rather than characterize it in terms of reasonable inferences. Is there anything in the Oklahoma law, case law, that sheds any light on this question of having to make this sort of affirmative representation that we're gonna fill the prescription? I mean, we heard from counsel, they've got this Wofford case, but I wonder if you've got any cases that would help us. Sure, so most of our focus has been on Oklahoma law and pre-existing duty. Yeah, we're assuming the duty. Yes, and we don't- Quadrant two or three, whatever that is. We don't disagree with the basic premise of Oklahoma law that a duty can be assumed by words or conduct. We just don't have that here as a factual matter. Do you have a case, though, that would tell us that this isn't the kind of situation to recognize and assume duty? Yes, if you'll give me just a moment, I am over my time, I apologize. Now, it's my fault, I'm asking you this question. So I think the best case that I could point you to is the Harwood versus Ardog group on pages 40 and 41 of our response brief. That is a case that I think provides a good contrast to what happened here, where an Oklahoma appellate court found that there, an employer had assumed a duty to provide a safe sidewalk, even though the employer didn't own that sidewalk because of specific representations that the employer had made to its employees about what it would do to keep that sidewalk safe. That's the kind of evidence that's missing here. Thank you, counsel, and thanks to both of you. Appreciate the arguments this morning. The case will be submitted, and counsel are excused.